**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WILLIE JAMES YELDON,

                             Plaintiff,

         - v -                                Civ. No. 9:10-CV-266
                                                       (TJM/RFT)

DONALD SAWYER, *Director*; JAMES MORGAN, *Director*;
MAXYMILLIAN, *Dr., Director*; BILL CHARMAIN, *Treatment
Leader*;[1] KUMAR BAHL, *Dr., Physical*; BRENNAN, *T.A.*;
FAIRBROTHER, *T.A.*; ESPINOSA, *T.A.*; SEARCY, *T.A.*;
CROCKET, *Nurse*; FORSTIE; FRAZIER, *T.A.*; FICAL, *T.A.*;
PIRACHIA, *T.A.*;[2] ASHLEY, *T.A.*; MCCANN, *T.A.*; LEONARD,
*T.A.*; PARRISH, *T.A.*; GRAY, *N.A.*; DELMEDICO, *N.A.*;
BRETT DAVIS, *T.A.*; HOLLENBECK, *T.A.*; DONNA
NARDOZZA, *Nurse*; LAUREN BARRETT, *Nurse*; NURSE
MEDIA;[3]

                          Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

WILLIE JAMES YELDON
Plaintiff, *Pro Se*
C-97716
CNYPC
P.O. Box 300
Marcy, NY 13403

HON. ERIC T. SCHNEIDERMAN            DEAN J. HIGGINS, ESQ.
New York State Attorney General          Assistant Attorney General
Attorney for Defendants[4]
The Capitol
Albany, NY 12224

---

[1] The record before the Court indicates that the correct spelling of this Defendant's name is Charmaine Bill. *See* Dkt. No. 15-1, Notice of Appearance.

[2] The correct spelling of this Defendant's name is Qasim Piracha. *See* Dkt. No. 15-1, Notice of Appearance.

[3] The correct spelling of this Defendant's name is Marianne Madia. *See* Dkt. No. 15-1, Notice of Appearance.

[4] Dean J. Higgins, Esq., has appeared on behalf of the Defendants, except Defendants McCann and Crocket, who have not been served. *See infra* Part II.B.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Willie James Yeldon, who is currently confined at the Central New York Psychiatric Center, commenced this action pursuant to 42 U.S.C. § 1983, alleging that the Defendants used excessive force against him and failed to protect him from the use of such excessive force. Dkt. No. 1, Compl. Defendants now bring a Motion for Summary Judgment under Federal Rule of Civil Procedure 56. Dkt. Nos. 41 & 45. Plaintiff opposes the Motion. Dkt. No. 47. For the reasons that follow, this Court recommends that Defendants' Motion be **granted** in part and **denied** in part.

## I. BACKGROUND

The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with this District's Local Rules of Practice, which was not specifically countered nor opposed by Plaintiff. *See* N.D.N.Y.L.R. 7.1(a)(3) ("The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.") (emphasis in original).[5]

---

[5] In his Opposition to the Defendants' Motion for Summary Judgment, Plaintiff includes a section entitled "Statement of Facts." *See* Dkt. No. 47 at p. 3. However, this section appears to contest only the Defendants' Memorandum of Law and the legal conclusions drawn thereof; it does not, as Local Rule 7.1(a)(3) requires, mirror the movant's Statement by matching numbered paragraphs, or set forth specific references to the record where the material fact is alleged to have arisen. Even a liberal reading of Plaintiff's "Statement of Facts" does not provide this Court with any specific factual allegations Plaintiff is either offering or contesting.

In a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (a court is to read a *pro se* party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest"). This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond*, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001). The courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions. *See Giguere v. Racicot*, 2002 WL 368534, at *2 (N.D.N.Y. Mar. 1, 2002) (citing, *inter alia*, *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.*, 2001 WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001)). Nothing in Rule 56 imposes
(continued...)

At all times relevant to the claims included in the Complaint, Plaintiff was under civil commitment and participating in the sexual offender treatment program at the Central New York Psychiatric Center ("CNYPC") located in Marcy, New York.  Dkt. No. 41-2, Defs.' Statement Pursuant to Rule 7.1(a)(3) [hereinafter "Defs.' 7.1 Statement"], at ¶ 1.  On November 18, 2009, Plaintiff was moved from Ward 305 to a holding ward side room in Ward 604 for disciplinary reasons and was kept there until the other residents returned from recreational activities.  *Id.* at ¶¶ 15-16.  Plaintiff initially resisted his transport to the holding ward by refusing to move, but he eventually consented.  *See* Dkt. No. 45-1, Pl.'s Dep., at pp. 24-25.  Plaintiff was very upset that he had to wait in this side room.  Defs.' 7.1 Statement at ¶ 17.

At approximately 6:30 p.m., Plaintiff was escorted back to Ward 305 by various Secure Care Treatment Assistants ("TA"), TA Piracha, and Nurse Madia.  *Id.* at ¶ 18; Pl.'s Dep. at p. 28.  On the elevator, Plaintiff told Defendant Piracha that he "didn't want him in [Plaintiff's] face," and when they arrived on Ward 305, Defendant Madia told Plaintiff to go into the side room.  Pl.'s Dep. at pp. 28-29; Defs.' 7.1 Statement at ¶ 19.

Plaintiff claims that when he was in the side room of Ward 305, Defendant TA Davis came into the side room and called in "all of the other [D]efendants . . . [who] rushed in and threw [Plaintiff] to the floor, started kicking [him] and beating [him]."  Pl.'s Dep. at p. 33; *see also* Defs.' 7.1 Statement at ¶ 22.  Plaintiff claims this beating lasted about twenty minutes.  Defs.' 7.1 Statement at ¶ 35.

Defendants submit evidence claiming that Plaintiff was very upset at his confinement in the

---

[5](...continued)

an obligation on the Court to conduct an independent search and review of the record to find proof of a factual dispute.  *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).

side room on Ward 305 and was arguing with Defendant Piracha and loudly threatening the CNYPC staff.  *Id.* at ¶¶ 21 & 25-26.  After Piracha left the side room and stood in the hallway, out of Plaintiff's sight, Plaintiff started screaming, "I'm going to kill that little m-f-er" and attempted to push the door to the hallway open.  Dkt. No. 41-16, Nicholas Hollenbeck Decl., dated Sept. 21, 2011, at ¶¶ 19-30.  As Plaintiff "pointed to Piracha," and screamed, "I'm going to kill that m-f-er," he punched Defendant Hollenbeck in the left ear.  *Id.* at ¶¶ 30-31; Defs.' 7.1 Statement at ¶ 30. Other TAs, including Defendant McCann, responded and grabbed Plaintiff and took him to the ground, but it "wasn't a hard takedown."  Hollenbeck Decl. at ¶¶ 32-34 & 39; Defs.' 7.1 Statement at ¶¶ 31-33.  Plaintiff struggled hard until he was placed in restraints on the bed in the room. Hollenbeck Decl. at ¶¶ 41-46.

Conversely, Plaintiff testified that he did not punch nor hit any of the staff, and that he did not have any particular problem with Defendant Piracha, but rather that the Defendants gathered on this occasion as a "beat-up crew" to assault the Plaintiff.  Pl's Dep. at pp. 34-35, 41 & 64.  He claimed that he saw "all of the other defendants listed in [his] [C]omplaint" in or around the side room on Ward 305.  *Id.* at p. 39.  He also claims that Defendant Madia was the "boss," such that she would give TAs directions, and that Madia, Crocket, Forstie, Gray, and Delmedico were present but did not hit Plaintiff, and instead "looked the other way and let [the abuse] happen."  *Id.* at pp. 36-37 & 42.  In his deposition, Plaintiff specifically names Defendants Ashley, Brennan, Davis, Espinosa, Fairbrother, Fical, Frazier, Hollenbeck, Leonardi, Parrish, Piracha, Searcy, McCann, and Nardoza as participating in the attack.  *Id.* at pp. 43-46.  He states that Charmaine Bill, Maxymillian, Morgan, and Sawyer were not present at the time of the assault, and that he sued them solely because of their supervisory roles.  *See id.* at pp. 43-47.  He did not know who Defendant Barrett was when asked

*-4-*

during his deposition.  *Id.* at p. 44.

Lastly, Plaintiff claims that Defendant Dr. Bahl administered medication to him while he was in restraints.  *Id.* at p. 47.  However, Defendants submit evidence that Dr. Bahl did not see Plaintiff after he was transferred from Ward 604 back to Ward 305, nor did he have any role in Plaintiff's restraints or medication.  *See* Dkt. No. 41-8, Kumar Bahl, M.D., Decl., dated Sept. 21, 2011.  The evidence shows that Plaintiff's injuries were relatively minor.  *See* Pl.'s Dep. at pp. 62-64 (describing headaches treated with pain medication, swelling and bruises that have gone away, and a treatment of ointment for abrasions on Plaintiff's legs); Defs.' 7.1 Statement at ¶ 36.  Plaintiff refused any medical evaluation or treatment after he was released from his restraints, but wanted his "slightly swollen" left ear area and "superficial abrasions [that looked liked] scrapes as if from going up a ladder" on his right lower leg documented.  *See* Dkt. No. 41-19, Stephanie Oldick Decl., dated Sept. 26, 2011.

## II. DISCUSSION

### A. Standard of Review

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994).  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d at 54 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary

-5-

judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v.*

*Eastmond*, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001).

### B. Unserved Defendants

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[6] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, dismissing the case without prejudice as to that defendant. *Id.*

In this case, there is no indication that Defendants Crocket or McCann have been properly served. *See* Dkt. Nos. 11, Summons Returned Unexecuted as to Crocket, McCann, & 29, Summons Again Returned Unexecuted as to Crocket. In a Letter-Motion and Notice of Appearance, Dean Higgins, Esq., Attorney for the Defendants, notified Plaintiff and this Court that Defendants McCann and Crocket – as well as Defendant Nardozza – "no longer work at the Central New York Psychiatric Center," and that their whereabouts were unknown. *See* Dkt. No. 15.

More than the required 120 days have passed since the complaint was filed herein. Further, the Discovery deadline in this litigation has expired as of June 19, 2011. Plaintiff has provided no explanation nor good cause for his failure to serve these Defendants. Under these circumstances, the claims against Defendants Crocket and McCann should be **dismissed** without prejudice to renew, pursuant to FED. R. CIV. P. 4(m).

### C. Excessive Force

Plaintiff claims that on November 18, 2009, he was beaten, held in restraints, and

---

[6] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L.R. 4.1(b).

administered medication against his will.  Defendants maintain that only a modest amount of force was used to maintain order after Plaintiff attacked a TA, and thus they should be entitled to summary judgment.

As an initial matter, Plaintiff asserts that certain policies and restrictions imposed on him at the CNYPC amount to cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff, however, was released by the New York State Department of Corrections and Community Supervision to CNYPC upon the completion of his prison term and thus is no longer a prison inmate. The Eighth Amendment, which prohibits the "cruel and unusual punishment of those convicted of crimes, is therefore not applicable under the circumstances."  *Lane v. Carpinello*, 2009 WL 3074344, at *18 (N.D.N.Y. Sept. 24, 2009) (citing *Youngberg v. Romeo*, 457 U.S. 307, 312 (1982)). This does not mean that a patient involuntarily committed for treatment is without constitutional protections; rather, "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed . . . in unsafe conditions." *Youngberg v. Romeo*, 457 U.S. at 315-16 (1982).[7]  Plaintiff's claims predicated upon violations of the Eighth Amendment are instead analyzed and evaluated under the Due Process clause of the Fourteenth Amendment.  *See Lane v. Carpinello*, 2009 WL 3074344, at *18 & *22 (citing *Dove v. City of New York*, 2007 WL 805786, at *7 (S.D.N.Y. Mar. 15, 2007) and *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 253 (2d Cir. 2001) for the proposition that "individuals in the non-seizure, non-prisoner environment have a substantive due process right to

---

[7] While Plaintiff does not allege that the conditions at CNYPC are unsafe, the same rationale applies to his general Eighth Amendment claims of freedom from cruel and unusual punishment due to excessive force and a failure to protect.  *See*, *e.g.*, *Youngberg v. Romeo*, 457 U.S. at 316; *Dove v. City of New York*, 2007 WL 805786, at *7 (S.D.N.Y. Mar.15, 2007) ("However, because plaintiff was not a convicted prisoner at the time of the alleged deprivation of his federal rights, any claim arising from his confinement must be asserted under the Due Process Clause of the Fourteenth Amendment, rather than the provisions of the Eighth Amendment.")

be free from the use of excessive force by their custodians").  However, the Eighth and Fourteenth Amendment tests that apply to the claims of excessive force are essentially the same.  *See United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999) (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)).

To determine whether an excessive force violation occurred, the "core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. at 6-7 (quoted in *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994)).  To validly assert an excessive force claim, the plaintiff must show (1) objectively, that the defendants' actions violated "contemporary standards of decency," and (2) subjectively, that the defendants acted wantonly and in bad faith.  *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations and citations omitted).  The Second Circuit has provided additional guidance in evaluating an excessive force claim in the non-prisoner environment, noting that the district court must consider

> the need for the application of force, the relationship between the need and amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm . . . . [I]f the force was maliciously or sadistically [employed] for the very purpose of causing harm in the absence of any legitimate government objective and it results in substantial emotional suffering or physical injury, then the conduct is presumptively unconstitutional . . . . [M]alicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience. . . .  [C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.

*Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d at 251-52 (internal quotation marks and citations omitted).

Here, the record shows two conflicting views of what transpired in the side room on Ward 305.  Plaintiff claims that a "beat-up crew" consisting of Defendants Ashley, Brennan, Davis, Espinosa, Fairbrother, Fical, Frazier, Hollenbeck, Leonardi, Parrish, Piracha, Searcy, McCann and

Nardoza threw Plaintiff on the floor, punched and kicked him for about twenty minutes.  *See generally* Dkt. No. 45-1, Pl.'s Dep.  He was then placed in restraints, and Defendant Bahl administered medication to him against his will.  *Id.* at p. 47.  Plaintiff claims his injuries consisted of a swollen ear and his shin being scraped.  *Id.* at pp. 62-64; *see also* Dkt. No. 41-4, Ex. A, Investigative Report, at pp. 85-87 (photos taken of the Plaintiff's injuries).  Defendants, on the other hand, submit considerable evidence that Plaintiff, agitated at being placed in the holding ward in Ward 604 during recreation time, verbally threatened the CNYPC staff, pushed open the door of the side room in Ward 305, shouted obscenities at Defendant Piracha, and punched Defendant Hollenbeck in the left ear.  *See, e.g.*, Dkt. Nos. 41-10, Brett Davis Decl., dated Sept. 22, 2011; 41-16, Nicholas Hollenbeck Decl.; 41-19, Stephanie Oldick Decl.; & 41-21, Qasim Piracha Decl., dated Sept. 21, 2011.  Further, many Defendants claim to have not been present on Ward 305 at the time Plaintiff was restrained.  *See, e.g.*, Dkt. No. 41-8, Kumar Bahl, M.D., Decl., dated Sept. 21, 2011 (also stating he did not administer medication to Plaintiff); 41-12, Michael Fairbrother Decl., dated Sept. 21, 2011; & 41-22, Jason Searcy Decl., dated Sept. 25, 2011; *see also* Dkt. No. 41-23, Christopher Smith Decl., dated Sept. 22, 2011 (stating that he was on Ward 305 and "heard the commotion from the sideroom . . . [but that Smith] remained where [he] was because there were enough staff with Resident Yeldon already and [he] was monitoring the dayroom").  Lastly, Defendants submit evidence that the abrasion on Plaintiff's left leg was self-inflicted and caused from picking a scab off.  *See* Dkt. No. 41-15, Luis Hernandez, M.D., Decl., dated Sept. 21, 2011 (noting that Dr. Hernandez, who is not a Defendant in his action, examined Plaintiff while in restraints and did not find any injury, but later noticed red area on right shin that "appeared to be an old lesion that [Plaintiff] had picked the scab off").

If the circumstances of Plaintiff's restraint were as Defendants' evidence states that they were, Plaintiff's claim should be dismissed on summary judgment as Defendants only used *de minimis* force for a limited period of time and only for the purpose of restoring order.  However, if Plaintiff's sworn testimony in his deposition is to be believed, Defendants assaulted Plaintiff without any "reason, because [he] didn't do anything to them . . . . [Plaintiff] was complying with the rules." Pl.'s Dep. at p. 50.  Despite Defendants' overwhelming evidence, a genuine issue of material fact exists as to whether "force was maliciously or sadistically [employed] for the very purpose of causing harm in the absence of any legitimate government objective." *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d at 251.  These two versions of the event are best reconciled by a jury, rather than by this Court on a summary judgment review.  *See*, *e.g.*, *Robbins v. Aetna Life Ins. Co.*, 2006 WL 2589359, at *10 (E.D.N.Y. Sept. 8, 2006) ("In light of the conflicting . . . evidence, the court finds that neither party has succeeded in eliminating any genuine issue of material fact, making summary judgment on the merits inappropriate.").  Therefore, we recommend that Defendants' Motion for Summary Judgment be **denied** as it relates to Plaintiff's claim that Defendants Ashley, Brennan, Davis, Espinosa, Fairbrother, Fical, Frazier, Hollenbeck, Leonardi, Parrish, Piracha, Searcy, Nardoza, and Bahl used excessive force in the Ward 305 side room.

This Court additionally notes that Plaintiff also claims that Defendants Hollenbeck and Piracha kick, beat, punched, hit, and "sexually harassed" him while he was in the side room in Ward 604, before being brought down to Ward 305.  *See* Dkt. No. 1, Compl., at ¶ 52.  In his Deposition, however, Yeldon explicitly stated that no one placed their "hands on [Plaintiff] or assaulted [Plaintiff] . . . until [he] returned back to 305 Ward."  Pl.'s Dep. at pp. 31-32.  Plaintiff provides this Court with no other evidence regarding this assault allegation in Ward 604.  Accordingly, because

*-11-*

no issue of material fact exists such that a reasonable jury could find that Plaintiff was subjected to excessive force while he was in the side room of Ward 604, it is recommended that Defendants' Motion for Summary Judgment be **granted** as to any such claim.

### D. Failure to Protect

Plaintiff also brings claims against Defendants Madia, Crocket, Forstie, Gray, and Delmedico, the medical staff at CNYPC, for failing to protect Plaintiff during the incident in Ward 305, who he claims instead "looked the other way and let [the abuse] happen." *See* Pl.'s Dep. at pp. 36-37 & 42.

As with excessive force claims, claims of failure to protect by patients who are involuntarily committed are analyzed within the framework of the Fourteenth Amendment, instead of the Eighth Amendment. *See*, *e.g.*, *Beck v. Wilson*, 377 F.3d 884, 889 (8th Cir. 2004) ("The Supreme Court explained that 'when the State takes a person into its custody and holds [her] there against [her] will, the Constitution imposes upon it a corresponding duty to assume some responsibility for [her] safety and general well-being.'") (quoting *DeShaney v. Winnebago Couty Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) (alterations in original)). However, the "Second Circuit has yet to address the correct standard to be applied when evaluating a failure to protect claim arising out of an involuntary commitment, and there appears to be some uncertainty regarding the matter." *Lane v. Carpinello*, 2009 WL 3074344 at *18.

As the Supreme Court established in *Youngberg*, "involuntarily committed mental patients have substantive due process rights, . . . . [and] held that only an official's decision that was a 'substantial departure from accepted professional judgment, practice or standards' would support a substantive due process claim brought by an involuntarily committed mental patient." *Vallen v.*

*Carrol*, 2005 WL 2296620, *8 (S.D.N.Y. Sept. 20, 2005) (quoting *Youngberg v. Romeo*, 457 U.S. at 310). However, some courts in this district have held that the general approach to substantive due process claims asserted under section 1983, which requires that a plaintiff show that the defendants' actions involved "conduct intended to injure [plaintiff] in some way unjustified by [any] . . . governmental interest and most likely rise to the conscience-shocking level," would result in an unduly heavy burden being placed upon a plaintiff who is under the care and control of the state. *Id.* at *8-*9. Analogizing the plaintiff's rights to those of a pre-trial detainee, these courts have suggested their agreement with the "deliberate indifference" standard employed in analyzing such circumstances. *See id.* at *9 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

We need not resolve this issue here, because whether the Defendants' actions are measured under the "conscience-shocking" and "substantial departure" standard or the "deliberate indifference" standard, the result is the same. The evidence posits two conflicting stories. If the Defendants' narrative and evidence is to be believed, Plaintiff was unruly, violent, and presented a danger to staff and to himself. In that situation, "failing to protect" Plaintiff from being restrained and administered medication would neither shock the conscience or consist of deliberate indifference towards Plaintiff's health or safety. However, if Plaintiff's answers in his Deposition are truthful, Defendants Madia, Crocket, Forstie, Gray, and Delmedico stood idle outside the Ward 305 side room while other CNYPC staff assaulted the Plaintiff, without provocation, for about twenty minutes. This action would violate both of the above-listed standards. The Court may not now, on a motion for summary judgment, "assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute [our] judgment for that of the jury." *Nimely v. City of New York*, 414 F.3d 381, 390 (2d Cir. 2005) (quoting *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 429

(2d Cir. 1995).   Therefore, as with Plaintiff's claims of excessive force, we recommend that

Defendants' Motion for Summary Judgment on Plaintiff's failure to protect claims against

Defendants Madia, Forstie, Gray, and Delmedico be **denied**.

### E. Personal Involvement

It is well settled that the personal involvement of a defendant is a prerequisite for the

assessment of damages in a § 1983 action.  *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.

1977).   Furthermore, the doctrine of *respondeat superior* is inapplicable to § 1983 claims.  *See Polk*

*County v. Dodson*, 454 U.S. 312, 325 (1981) (internal citations omitted); *Colon v. Coughlin*, 58 F.3d

865, 873 (2d Cir. 1995).   Thus, a defendant may not be liable for damages simply by virtue of

holding a supervisory position.  *See*, *e.g.*, *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).   Rather,

the personal involvement of a supervisory defendant may be shown when:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a report or appeal, failed to
> remedy the wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited deliberate indifference
> to the rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d at 873.[8]

Defendants contest that Defendants Maxymillian, Sawyer, Bill, and Morgan were personally

involved in any of Plaintiff's alleged constitutional violations; rather, they were included by virtue

of their supervisory positions only.   Dkt. No. 41-24, Defs.' Mem of Law, at p. 15.   All evidence in

---

[8] Several lower courts have struggled with the impact *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) had upon *Colon*, and specifically whether *Iqbal* calls into question certain prongs of the *Colon* five-part test for supervisory liability.  *See Sash v. United States*, 674 F. Supp. 2d 531, 543 (S.D.N.Y. 2009) (collecting cases).   Because the Second Circuit has not yet issued a decision settling this matter, *Colon* remains good law.

*-14-*

the record agrees with that contention.  In his deposition, Plaintiff explicitly states that he included these Defendants in his lawsuit because they were "the head person[s] of the program" but were not "directly involved in the assault."  Pl.'s Dep. at pp. 43-47.  Our review of the record undisputedly establishes that Plaintiff has failed to show any direct participation by Defendants Maxymillian, Sawyer, Bill, and Morgan in the alleged violations, that the Defendants' policies allowed the continuance of constitutional violations, or that the Defendants were negligent in their supervision of subordinates.  Therefore, Defendants' Motion for Summary Judgment should be **granted** and Plaintiff's claims against Defendants Maxymillian, Sawyer, Bill, and Morgan should be **dismissed** for want of personal involvement.

Likewise, Defendant Barrett should be **dismissed** from this action.  In his Complaint, Plaintiff claims that Barrett was also present during the assault on him, and that Barrett wrote a note on November 19, 2009, stating that Plaintiff had refused to take his insulin medication.  Compl. at ¶¶ 45 & 54.  However, Plaintiff made no allegations against Barrett at his Deposition.  *See* Pl.'s Dep. at p. 43.  Plaintiff has submitted no evidence that Defendant Barrett was involved in any wrongdoing in his action, and accordingly, this Court recommends dismissal of any claims against him as lacking in personal involvement.

### F. Eleventh Amendment

Defendants also raise in their Motion for Summary Judgment dismissal of Plaintiff's claims made against them in their official capacity, pursuant to the Eleventh Amendment.  *See* Defs.' Mem of Law at p. 6-7.

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  Although by its terms, the amendment bars suit by citizens of one State against another State, the Supreme Court has held that such amendment similarly bars suits against a State by its own citizens.  *Hans v. Louisiana*, 134 U.S. 1 (1890).  "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'"  *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the State, including a state agency in federal court.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 98; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984).  To the extent a state official is sued for damages in his official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state."  *Rourke v. New York State Dep't. of Corr. Servs.*, 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing, *inter alia*, *Berman Enters., Inc. v. Jorling*, 3 F.3d 602, 606 (2d Cir.), *cert. denied*, 510 U.S. 1073 (1994)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

In appropriate circumstances, the jurisdictional bar of the Eleventh Amendment may immunize a state official acting in his or her official capacity.  *See In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citation omitted).  However, under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), a suit may proceed against a state official in his or her official capacity – notwithstanding the Eleventh Amendment – when a plaintiff "(a) alleges an ongoing violation of

*-16-*

federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d at 618 (quotations and citations omitted).

Here, Plaintiff seeks injunctive relief as well as compensatory damages against state employees. *See* Compl. at ¶ 55. Therefore, as state officials, Defendants cannot be sued in their official capacities in a claim for money damages. However, Plaintiff may seek monetary damages from them in their individual capacities. Further, Plaintiff may sue the Defendants for declaratory and injunctive relief in both their individual and official capacities because "official-capacity actions for prospective relief are not treated as actions against the State." *Cruz v. Gomez*, 202 F.3d 593, 595 n.2 (2d Cir. 2000) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989)). Accordingly, Defendants' Motion for Summary Judgment should be **granted** to the extent that Plaintiff asserts claims for monetary relief against them in their official capacities.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 41) be **granted in part** and **denied in part** as follows:

1. Defendants McCann and Crocket should be **dismissed** from this action based upon Plaintiff's failure to effectuate service of process within 120 days of the filing of his Complaint, pursuant to Federal Rule of Civil Procedure 4(m);

2. To the extent asserted, Plaintiff's excessive force claims against Defendants Ashley, Brennan, Davis, Espinosa, Fairbrother, Fical, Frazier, Hollenbeck, Leonardi, Parrish, Piracha, Searcy, Nardoza, and Bahl, relating to an assault on Plaintiff in the CNYPC side room of Ward 305, should survive Defendants' Motion;

3. To the extent asserted, Plaintiff's excessive force claims against Defendants Hollenbeck and Piracha, relating to an assault on Plaintiff in the side room in Ward 604, should be **dismissed**;

4. To the extent asserted, Plaintiff's failure to protect claims against Defendants Madia, Forstie, Gray, and Delmedico, relating to an assault on Plaintiff in the CNYPC side room of Ward 305, should survive Defendants' Motion;

5. To the extent asserted, Defendants Maxymillian, Sawyer, Bill, Morgan, and Barrett should be **dismissed** from this action based upon Plaintiff's failure to assert their personal involvement in any wrongdoing;

6. All causes of action seeking monetary relief should be **dismissed**, pursuant to the Eleventh Amendment, insofar as they are stated against the Defendants in their official capacities; and it is further

**ORDERED**, that the Clerk of the Court update the Docket to reflect the correct spellings of the names of Defendants Charmaine Bill, Qasim Piracha, and Marianna Madia; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   April 26, 2012

*-18-*

Albany, New York

Randolph F. Treece
U.S. Magistrate Judge